# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DENNY REED,                                    Case No. 1:14-cv-369

      Plaintiff,

                                       Bowman, M.J.

  v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OF OPINION AND DECISION

Plaintiff Denny Reed filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  The parties have consented to the jurisdiction of the Magistrate Judge for disposition of this matter.  (Doc. 10).  For the reasons explained below, the finding of non-disability is not supported by substantial evidence in the administrative record, and is herein REMANDED for further fact-finding.

### I.  Summary of Administrative Record

In March 2011, Plaintiff filed an application for Disability Insurance Benefits (DIB) and alleging a disability onset date of December 23, 2008 due to physical and mental impairments.[1]  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at a hearing on September 25, 2012. The ALJ heard testimony

---

[1] Plaintiff previously filed applications for DIB in March 2010 and July 2010. (Tr. 134- 37). The claims were denied at the initial stage (Tr. 102-05) and it does not appear that Plaintiff appealed the determinations.

from Plaintiff and an impartial vocational expert. On September 24, 2012, the ALJ denied Plaintiff's application in a written decision. (Tr. 20-28). Plaintiff now seeks judicial review of the denial of his applications for benefits.

Plaintiff was born in 1972 and was 36 years old on the alleged onset date. He has a high school education and past relevant work as a welder, auto repair manager, material handler, drywall finisher, auto parts salesperson and motor home salesperson. Plaintiff alleges disability based primarily on back pain caused by degenerative disc disease.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbosacral degenerative disc disease and diabetes mellitus." (Tr. 22). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform sedentary work with the following limitations:

> (1) Occasionally crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no operation of foot controls with the right lower extremity; (6) no pushing or pulling with the right lower extremity; (7) no concentrated exposure to vibrations; and (8) limited to performing unskilled, simple, repetitive tasks.

(Tr. 24). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 27-28). Accordingly, the ALJ determined that Plaintiff is not

under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: (1) failing to find that Plaintiff's impairments did not meet or medically equal Listing 1.04; and (2) improperly weighing the opinion evidence. Upon close analysis, I conclude that Plaintiff's first assignment of error is well-taken and dispositive.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that the claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits

must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is not Substantially Supported

The third step in the sequential evaluation for disability benefits requires a determination of whether an impairment or a combination of impairments meets or equals one or more of the medical conditions listed in Appendix 1. *See* 20 C.F.R. §§ 416.920, 416.925, 416.926. An impairment meets a listed impairment only when it manifests the specific findings described in the set of medical criteria for that particular listed impairment. 20 C.F.R. § 416.925(d). Medical equivalence must be based on medical findings supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 416.926(b). It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987).

If a claimant suffers from an impairment which meets or equals a listed impairment, the claimant is disabled without consideration of the claimant's age, education, and work experience. *See Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 528 (6th Cir.1981). An impairment, or combination of impairments, will be deemed medically equivalent to a listed impairment if the symptoms, signs, and laboratory findings, as shown in the medical evidence, are at least equal in severity and duration as to the listed impairment. *Land v. Sec'y of Health & Human Servs.,* 814 F.2d 241, 245 (6th Cir.1986).

It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.,* 118 F. App'x 3, 6 (6th Cir.2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). An ALJ must compare the available medical evidence with the requirements for listed impairments to determine whether a claimant's condition is equivalent to a listing. *Reynolds v. Comm'r of Soc. Sec.,* No. 09–2060, 2011 WL 1228165, at *2 (6th Cir. Apr.1, 2011).

Here, the ALJ determined that Plaintiff's impairments, singly or in combination, did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14–15). Plaintiff, however, asserts that the ALJ erred by failing to find that his impairments met or equaled Listing 1.04A. Listing 1.04 provides:

> Disorders of the spine ... resulting in compromise of a nerve root .... [w]ith [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, 1.04. Thus, for Plaintiff to have been found disabled at step three, he must have had (1) a spinal disorder that (2) result[ed] in "compromise of a nerve root" with (3) "neuro-anatomic distribution of pain," (4)

"limitation of motion of the spine," and (5) motor loss (muscle weakness) accompanied by (6) sensory or reflex loss. *Id.*

In concluding that Plaintiff did not meet the requirements for Listing 1.04 the ALJ stated:

> While the claimant's representative argued that Dr. Bender's February 2011 consultation supports a "meets listing" finding, there is no such opinion offered in this assessment.  Nevertheless, 1.04 (Disorder of the Spine), and 9.00 (endocrine disorder were considered.  However, the record fails to document compromise of the nerve root and a gait abnormality of the severity described in section 1.00B2.b. (Tr. 24).

Plaintiff, however, contends that the ALJ's analysis relating to listing 1.04 and Dr. Bender's report is not substantially supported by the record.  The undersigned agrees.

As referenced by the ALJ on February 14, 2011 an independent medical examination was done for the defense in the personal injury case by orthopedic surgeon Thomas A. Bender, M.D. (Tr. 384-88). After reviewing the medical documentation, he noted that there "was extrusion of the posterior cortex of L3 resulting in cauda equina syndrome." (Tr. 385). Dr. Bender opined that as "a result of the three–vehicle accident that occurred on 6/30/08, the claimant appears to have sustained an axial spine strain affecting the cervical/lumbar spine." *Id.* It is evident that the claimant had pre-existing, significant spinal trauma with residual cauda equina syndrome related to the event of 5/26/07. (Tr. 387).  The treatment of the claimant in 2007 including the spinal fusion on 5/27/07 does not show decompression of the spinal canal. (Tr. 387).  The spinal canal remains at least 50% compromised at L3 with only 8mm of spinal canal adjacent to the filum terminale. This would account for the chronic neurological changes to the right lower extremity. (Tr. 387).

Plaintiff argues that the ALJ's cursory conclusion that Dr. Bender did not opine that Plaintiff met listing 1.04 failed to properly consider the findings contained in the report. In this regard, Plaintiff points to Dr. Bender's diagnosis of cauda equina syndrome. Plaintiff contends that "cauda equine syndrome is, by definition, the compromise of the nerve root." (Doc. 13, pp. 2-3). *See also Bueno-Dominguez v. Colvin*, No. 13 CV 1637, 2015 WL 1064844, at *9 (N.D. Ill. Mar. 9, 2015) (As for evidence of nerve root compression characterized by neuro-anatomic distribution of pain, in January 2012 her treating doctor noted a working diagnosis of cauda equina syndrome after she reported severe and worsening hip pain with incontinence. Cauda equina syndrome is a condition involving the spinal nerve roots. Stedman's Medical Dictionary 328, 1892 (28th ed.2006)). Plaintiff further asserts that that the ALJ failed to consider that Dr. Bender also noted that the medical record "does not show decompression of the spinal canal" and that the spinal canal remains at least 50% compromised at L3. . . ." (Tr. 387).

Additionally, Plaintiff maintains that diagnostic tests have shown compromise of the nerve root or spinal cord with evidence of nerve root compression. In this regard, Plaintiff points to a March 17, 2009 MRI, which showed foraminal narrowing at L4-L5, stenosis of the thecal sac at L2-L3, and a slight compression deformity seen involving the superior endplate of L3 seen on x-ray April 30, 2010. Plaintiff also points to an April 2010 X-ray which showed a slight compression deformity, and argues that the x-ray showed evidence of nerve root compression. (Tr. 301).

The Commissioner, however, contends that the ALJ reasonably found that Plaintiff did not satisfy all of the criteria required to meet Listing 1.04. Specifically, the

Commissioner noted that while the MRI shows abnormalities, there is no evidence of nerve compression.  In fact, the report indicates that the "thecal sac and S1 nerve roots are intact." (Tr. 275).  Bruce Walls, M.D., the doctor who ordered the April 2010 x-ray, noted that the x-ray showed hardware in Plaintiff's back, but no sign of fracture or dislocations. (Tr. 300-03). Dr. Wall did not indicate that Plaintiff had nerve root compression or neurological abnormalities. (Tr. 303). Additionally, State agency physicians Esberdado Villanueva, M.D. and Maureen Gallagher, D.O., reviewed the March 17, 2009 MRI, and concluded that Plaintiff did not meet or equal any listings. (Tr. 84, 88, 94-98, 100).

However, such analysis was not included in the ALJ's decision and there is no indication from his decision that he considered such information.  The ALJ's one sentence analysis that the record did not show evidence of a nerve root compression prevents the Court from conducting any meaningful judicial review to determine whether the ALJ's Listings analysis is supported by substantial evidence. *Tennyson v. Comm'r of Soc. Sec.,* 1:10–CV–160, 2011 WL 1124761 (S.D.Ohio Mar.4, 2011) report and recommendation adopted, 1:10–CV–160, 2011 WL 1119645 (S.D.Ohio Mar.24, 2011). As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); see also *Wilson v. Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and

conclusions that he or she makes." *Bailey v. Commissioner of Social Security,* 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services,* 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs.,* Case No. 86–5875, 1988 WL 34109, at * 2 (6th Cir. Apr.18, 1988) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)); *see also Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Such is the case here.

### III. Conclusion

This matter should be remanded pursuant to sentence four of § 405(g) for further proceedings consistent with this decision. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the

Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

For the reasons explained herein, **IT IS HEREIN ORDERED THAT:**

1. The decision of the Commissioner to deny Plaintiff DIB benefits is **REVERSED** and this matter is  **REMANDED** under sentence four of 42 U.S.C. § 405(g).

2. On remand, the ALJ shall properly determine whether Plaintiff's impairments meet or equal Listing 1.04A and provide a clear rational for each determination. The ALJ should also reevaluate the remaining error(s) raised by Plaintiff as outlined above.

3. As no further matters remain pending for the Court's review, this case is **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge